**FILED**
U.S. District Court
District of Kansas

3/10/2021

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

· for the

District of Kansas

Clerk, U.S. District Court
By_____A.A_____Deputy Clerk

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>the premises located at<br>1375 S. Bebe, Wichita, Kansas,<br>as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>) |

Case No.   21-6024-GEB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ Kansas _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2251 | Production of Child Pornography |
| 18 U.S.C. 2252/2252A | Offenses relating to the Possession/Distribution of Child Pornography |

The application is based on these facts:

See Attached Affidavit of Probable Cause.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

John V. Ferreira, SA, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  3/10/2021

City and state:  Wichita, KS

_____
*Judge's signature*

The Honorable Gwynne E. Birzer
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION FOR A SEARCH WARRANT**

I, John V. Ferreira, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I have been employed as a Special Agent ("SA") of the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI") since 2004 and am currently assigned to the Kansas Internet Crimes Against Children Task Force (ICAC).  Previous to my employment with HSI, I was a state trooper/detective with the Arizona Department of Public Safety for nine (9) years. While employed by HSI, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography.  I have gained experience through training and everyday work relating to conducting these types of investigations.  I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media.  Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252, and 2252A, and I am authorized by law to request a search warrant.

2.      This affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for a device used by **RANDY SPORN** (described in Attachment A) that may be located at the **BUSINESS** known as **Calvin Opp Concrete** at **1375 S Bebe, Wichita, KS** (also described in Attachment A), for contraband and evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2251, 2252 and 2252A, which items are more specifically described in Attachment B of this Affidavit.

3.      The statements in this affidavit are based in part on information provided by other law enforcement officers, including Wichita Police Department/Sedgwick County Sheriff investigators, and on my review and investigation into this matter.  Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2251 (production of child pornography), 2252A(a)(2) (distribution/receipt of child pornography) and 2252A(a)(5)(B) (possession of child pornography) are presently located at the BUSINESS described in Attachment A.

## PROBABLE CAUSE

4.      Highly summarized, this investigation starts with the connection of two different Twitter accounts suspected of engaging in the distribution, receipt, and production of child pornography, and leads to the identification of a 17 year old minor who is used to provide child pornography to the user of one of the accounts. The user of the accounts is believed to be **RANDY SPORN**, based on IP address connections to his residence and work (**BUSINESS**). **RANDY SPORN** (further described in Attachment A) is a previously convicted sex offender.

### CyberTipline Report 61606638

5.      On or about December 23, 2019, Twitter submitted CyberTipline Report (CTR) 61606638 to the National Center for Missing and Exploited Children's (NCMEC) Cybertipline, to

report a Twitter user engaged in the possession, manufacture, or distribution of suspected child pornography.[1]

6.      As part of its report, Twitter provided the user's identifying information, the user's registration IP address, recent IP address logins, six uploaded files, as well as additional images and videos Twitter had pulled from the account's Account Images folder, and the Direct Messages Media (DM-Media) folder.

7.      Twitter identified the user as "mikeyfromtumbl1," User ID 1166023345470615552, with an associated email address of "jordanpatterson426@yahoo.com." The account was registered (created) on 8/26/2019 at 16:23:39 UTC from IP address 24.248.224.234.

8.      Twitter also provided additional user-provided account information, including the following description: "I was on Tumblr many times & nuked. I am going thru a rough spell. cashapp: $mikeythenudist http://amazon.com/hz/wishlist/ls/2LLKFA2EXB368?r."

9.      Twitter provided six files uploaded by the user on multiple dates between 11/14/2019 and 12/20/2019. These files reflected the user's "tweet" or posted message, including the image/video file and the accompanying message. The content of these tweets were viewed by Twitter, and were publicly available.

---

[1] On December 24, 2019, Twitter appears to have re-submitted the content of this report, including all attachments, as reflected in CTR 61621395.

10.     Generally, the uploaded images/videos depicted post-pubescent boys, whose ages are difficult to determine but suggestive of high-school age (14-17 years old) from the content and associated messaging. For example, a "tweet" on 12/20/2019 has a message of "After school nut" with a video of a boy masturbating. Another tweet on 12/17/2019 has a message of "Sam is getting his senior portraits taken today" with a picture of a boy standing naked with his penis exposed. Another pair of "tweets" on 11/14/2019 include a message "Doing homework" with a picture of a boy laying naked on a bed with a laptop on his lap and his penis is exposed.

11.     Twitter also provided files from the Account Images folder, which included 405 images of young post-pubescent males in various states of undress, nudity, and sexual acts, and 170 videos of young post-pubescent males and males whose ages are difficult to determine that are in various states of undress, nudity, and sexual acts.

12.     Twitter also provided the account's DM-Media folder, in which there were 170 images and videos. Some of them involve young adult males and males whose ages are difficult to determine that are in various states of undress, nudity, and sexual acts. There is an image (title ending in Q4Ym.jpg) and video (title ending in VQn0.mp4) that show the same boy (estimated to be under the age of sixteen from his size and development) changing in a locker room and his penis is exposed.

13.     From the profile information, communications and content, it appears the user of "mikeyfromtumbl1" has an interest in middle-to-high school aged boys and has made public-facing posts indicating that interest. It is common for such profiles to be used as a way to

cultivate relationships with other individuals with similar interests, to engage in private or direct messaging of contraband (child pornography).

**CyberTipline Report 71133752**

14.       On or about April 28, 2020, Twitter submitted CTR 71133752 to the National Center for Missing and Exploited Children's (NCMEC) Cybertipline, to report a Twitter user engaged in the possession, manufacture, or distribution of suspected child pornography.

15.       As part of its report, Twitter provided the user's identifying information, the user's registration IP address, recent IP address information, uploaded files, and additional images Twitter had pulled from the account and the Direct Messages Media (DM-Media) folder.

16.       Twitter identified the user as "Survivinglife8," User ID 1212098776556437504, with an associated email address of "jordanpatterson3150@gmail.com." This is not the same email address as for the "mikeyfromtumbl1" account, but does include part of the same "jordanpatterson" username.[2]

17.       Twitter's report also showed the account was registered (created) on 12/31/2019 at 19:50:54 UTC from IP address 24.248.224.234. That IP address is the same IP address used register the "mikeyfromtumbl1" account on 8/26/2019, as discussed above.

18.       Twitter's report also showed the user included a phone number of 316-807-2272.

19.       Twitter provided a number of media files, including the Tweet Media file (containing 266 images of young post-pubescent males in various states of undress, nudity, and

---

[2] Compare **jordanpatterson**426@yahoo.com with **jordanpatterson**3150@gmail.com.

sexual acts) and the DM-Media folder (containing 251 images of young post-pubescent males in various states of undress, nudity, and sexual acts).

20.     Within the DM-Media, there were messages between the user of "Survivinglife8" and another account that began on 1/21/2020, which showed "Survivinglife8" engaging a 17 year old boy (identified herein as User 9264[3]) in sexual conversation, including soliciting images from User 9264 and discussing nude images of another 16-17 year old boy. These messages included the following:

   a.     On 1/21/2020, Survivinglife8 messages User 9264, "Hi My name is Mikey. I usedtoo beon Tumblr more times that I can remember. Anyways I came across your Twitter and found it interesting. In a good way. You are just finding your way in this crazy world. Have you gotten a new job yet?" This content indicates the user of Survivinglife8 is the same as the user of mikeyfromtumbl1, discussed above.

   b.     On 1/22/2020, User 9264 messages Survivinglife8, "I've only ever worked in a grocery store. Being 17, I'm kinda limited." This communication plainly states User 9264's age. User 9264 later reiterates, "And yes, we have a movie theatre. I can't work there; 18+ only." To this, Survivinglife8 responds, "When I was 16 and 17, i worked at a nudist resort. My family has always been nudists. I was hired to do whatever was needed." This message reflects Survivinglife8's cognizance of User 9264's age, as well as shifting the discussion to a more sexual nature.

   c.     Later on 1/22/2020, when discussing another person's OnlyFans page, User 9264 says "I want to start one when I'm 18 but Ive still got like ten months." Again, this reiterates User 9264's age. To this, Survivinglife8 responds, "I saw his nudes on tumblr[4] several years ago. He is 19. So he must have posted when he was 16 or 17. I saved as many as i could." This indicates Survivinglife8 has previously downloaded or saved images of a nude 16-17 year old boy.

---

[3] These are the last four digits of the longer Twitter User ID, which is known to law enforcement but abbreviated here to protect the identity of the minor.

[4] Tumblr is another social media micro-blogging platform.

d.     On 1/23/2020, Survivinglife8 tells User9264, "I can't wait to see you naked and jack off to you." This communication seeks to persuade or induce the minor to create child pornography. Shortly after this communication, Survivinglife8 sends User 9264 an image, purportedly of himself, depicting a man's midsection sitting on a toilet and his erect penis is exposed. Later, Survivinglife8 sends User 9264 an image, purportedly of himself, depicting of a man naked on a dirt road with his butt exposed. User 9264 responds by sending an image depicting the minor nude and posed in front of a mirror exposing his butt/anus (this image meets the definition of child pornography). Survivinglife8 sends User 9264 two more pictures, purportedly of himself, depicting his exposed penis. User 9264 responds by sending an image depicting the minor taking a frontal nude selfie with his penis exposed and erect, and another image of the minor holding his penis in his hand (these images meets the definition of child pornography). Survivinglife8 then asks User 9264 for a picture of the minor's "booty hole" and "hard dick," to which User 9264 sent a picture depicting the minor's anus (these images meeting the definition of child pornography).

21.     Based upon the similar email username of "jordanpatterson," and shared account registration IP address information, CTR 71133752 was associated to CTR 61606638 (and duplicate CTR 61621395). Because geolocation of IP address information indicated a user in Wichita, Kansas, the CTRs were made available to the Kansas Internet Crimes Against Children (ICAC) Task Force with the Wichita/Sedgwick County Exploited and Missing Children's Unit (EMCU).

**Records check of the phone number 316-807-2272**

22.     WPD Detective Stephanie Neal conducted a records check of the phone number associated with the account of 316-807-2272. That phone number came back to **RANDY SPORN** with a date of birth of XX-XX-1960.

23.     Further records check of **RANDY SPORN** revealed that he was convicted of Aggravated Criminal Sodomy through Sedgwick County in 1989, and then again convicted of Aggravated Criminal Sodomy and Indecent Solicitation of a Child through Sedgwick County in

1996 (in a case involving a male child under sixteen years of age). As a result, **SPORN** is a lifetime registered sex offender.

24.    A Deputy with Sedgwick County's Offender Registration confirmed that **SPORN**'s phone number on file is 316-807-2272.

### Identification of Physical Location of associated IP addresses

25.    As noted above, Twitter's CTRs provided the registration IP address and some recent login IP addresses for both the "mikeyfromtumbl1" and "Survivinglife8" accounts. Information for every reported IP address was not obtained. However, as discussed below, several IP addresses for each account returned to physical locations associated with **RANDY SPORN**.

### IP Address 24.248.224.234

26.    As noted above, the IP address 24.248.224.234 was used to register the "mikeyfromtumbl1" on 8/26/2019 at 16:23:39 UTC. This same IP address was also reported by Twitter as a login for the account on 12/13/2019 at 18:41:48 UTC and again on 12/20/2019 at 23:16:56 UTC. Likewise, the "Survivinglife8" account was registered at the same IP address on 12/31/2019 at 19:50:54 UTC. That same IP address was reported by Twitter as a login for the account on 2/28/2020 at 18:30:20 UTC. Thus, this IP address was associated with logins for both accounts, across a period spanning from 8/26/2019 to 2/28/2020 (roughly 6 months).

27.    This IP address was operated by Cox Business. In response to a subpoena, Cox identified the subscriber as Calvin Opp Concrete Corp at 1375 S Bebe St Wichita, KS (**BUSINESS**).

28.     Det. Neal requested information from the Kansas Department of Labor and learned that **RANDY SPORN** was employed at Calvin Opp Concrete (**BUSINESS**). Surveillance of **SPORN** indicates he continues to be employed at this **BUSINESS**.

### IP address 24.248.225.42

29.     In CTR 61606638, Twitter reported the user logged in to the "mikeyfromtumbl1" account on 12/11/2019 at 15:11:20 UTC and 12/19/2019 at 19:53:36 UTC from IP address 24.248.225.42.

30.     This IP address was operated by Cox Business. In response to a subpoena, Cox identified the subscriber as Calvin Opp Concrete Corp at 1375 S Bebe St Wichita, KS (**BUSINESS**).

31.     As noted above, Calvin Opp Concrete is the workplace of **RANDY SPORN**.

### IP address 66.73.6.87

32.     In CTR 71133752, Twitter reported the user logged in to the "Survivinglife8" account on 02/28/2020 at 12:24:33 UTC from IP address 66.73.6.87. That IP address appeared again as the login on 04/03/2020 at 13:45:15 UTC.

33.     This IP address was operated by AT&T. In response to a subpoena, AT&T provided the following subscriber information for IP addresses 66.73.6.87 used on 2/28/2020 at 12:24:33 UTC and 4/3/2020 at 13:45:15 UTC:

Randy Sporn
3150 S Mount Carmel, Wichita, KS 67217
Phone number 316-807-2272

The phone number matches that included by the user of "Survivinglife8." According to AT&T, the subscriber's account was established on 12/27/2013.

34.      Notably, on 2/28/2020, there were two logins to the "Survinglife8" account, roughly 6 hours apart. The first (reflected in paragraph 33) occurs at 12:24:33 UTC (which converts to 6:24:33am Central) from IP address 66.73.6.87, which is SPORN's residence. The second (reflected in paragraph 27 above) occurs at 18:30:20 UTC (which converts to 12:30:20 Central) from IP address 24.248.224.234, which is **SPORN**'s workplace. This suggests a login from home before heading in to work, followed by a login over the lunch break.

### Search warrant for Jordanpatterson426@yahoo.com

35.      A state search warrant was obtained for the email address associated with the "mikeyfromtumblr1" account. In response, Oath Holdings sent a return listing the name on the account as Jordan Patterson with a date of birth of 05/02/1994. The account was created on 06/02/2016, and the phone number associated with the account is 316-807-2272. This is the same phone number known to be used by **RANDY SPORN**.

36.      Oath Holdings also sent a spreadsheet that showed the IP addresses used to log into the account. The IP address 66.73.6.87 was used on February 5th, 6th, 13th, and 20th of 2020 to log into the account. That IP address was also used to log into the "Survivinglife8" account and came back to **SPORN** at 3150 S Mt Carmel.

### Search warrant for Jordanpatterson3150@gmail.com

37.      A state search warrant was obtained for the email address associated with the "Survivinglife8" account. In response, Google sent a return which listed the name on the account

as Jordan Patterson with the device associated with the account as a Samsung SM-N910P smartphone.

### Search warrant for information on User 9264

38.     In May 2020, a state search warrant was obtained for the User 9264 account (discussed above). From information derived from this search warrant, Det. Neal was able to identify the physical location of the user, in Susanville, California. From information derived from the search warrant (including an email account and phone number), local investigators as the Susanville (CA) Police Department were able to identify and interview the individual (Minor Victim) operating the User 9264 account.

39.     In the interview with Susanville PD on 1/5/2021, Minor Victim confirmed operation of the User 9264 account and identified the pictures (sanitized) that had been exchanged in the communications with "Survivinglife8" (discussed above). Minor Victim advised the pictures were taken when he was seventeen, because Minor Victim had colored his hair blonde a week after he turned seventeen.

### Additional information regarding RANDY SPORN

40.     Det. Neal spoke with Deputy Clopton with the Sedgwick County Offender Registration Unit. He stated that **RANDY SPORN** reported on 2/18/2021 and listed his address as 3150 S Mt Carmel, Wichita, KS, his employment as Calvin Opp Concrete at 1375 S Bebe, and his phone number as 316-807-2272.

41.     On 2/8/2021, Det Neal sent a Kansas Department of Labor Request for **RANDY SPORN**'s employment and they sent back his wages come back to Calvin Opp Concrete (**BUSINESS**).

42.     On 2/25/2021, Det Neal saw **SPORN**'s 2021 white Hyundai Sonota with tag 051GMV parked at **BUSINESS**. It was observed there again on 2/26/2021 by Det. Maben. Physical surveillance at the **BUSINESS** on 3/9/2021 confirmed **SPORN**'s vehicle was parked at BUSINESS during regular business hours..

**CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS**

43.     From my training and experience, I know that individuals who are interested in the sexual exploitation of children will often seek out other likeminded individuals, for the purposes of normalizing their interest, discussing historical or planned child sexual abuse, and/or advertising the trade of child pornography. In this instance, the operator of the "mikeyfromtumblr1" and "Survivinglife8" accounts appear to have sought out likeminded individuals, as well as minors, via multiple social media applications, for the purpose of discussing and obtaining child pornography.

44.     From my training and experience, I know that individuals who are interested in the sexual exploitation of children will frequently utilize digital devices to access the internet to seek, obtain, and traffic in child pornography, and that the device(s) used by such individuals will retain evidence and artifacts of such activity. In this instance, the operator of the "mikeyfromtumblr1" and "Survivinglife8" accounts is accessing the accounts from multiple locations, indicating either

multiple devices are being used or that a mobile device is being used, or both. In any event, the device or devices is likely to retain information regarding the operation of these accounts.

45.     I also know that individuals who are interested in the sexual exploitation of children will protect and retain child pornography for long periods of time.[5] Typically, the individual will keep the device(s) close-by, in part for immediate access for sexual gratification and to maintain secure control over the contraband material. In this instance, records from Twitter indicate repetitious and continuous access and operation of multiple accounts used to advertise the user's interest in the sexual exploitation of middle-to-high school aged (minor) boys. Moreover, communications in the "Survivinglife8" account revealed the user's practice of saving images of minor boys engaged in the lascivious exhibition of genitals or other sexually explicit conduct.

46.     From my training and experience, I know that individuals who engage in communications with other individuals relating to the sexual exploitation of children will frequently retain information about these contacts, which can be used later to obtain access to other groups or forums relating to child pornography, or for exchanging additional child pornography. In this instance, the user of these accounts advertised and announced he was a user on another

---

[5] *See United States v. Shields,* 458 F.3d 269, 279 (3d Cir. 2006) (noting nine month delay in applying for search warrant would not have supported staleness challenge due to context of child pornography offender behavior along with evidence of continuing offenses); *United States v. Schesso,* 730 F.3d 1040 (9th Cir. 2013) (finding delay of 20 months did not render probable cause stale in context of investigation); *see also United States v. Allen,* 625 F.3d 830, 842-43 (5th Cir.2010) (holding that an 18-month delay between when defendant sent child pornography images through a peer-to-peer networking site and issuance of a search warrant did not render the information stale); *United States v. Morales-Aldahondo,* 524 F.3d 115, 117-19 (1st Cir.2008) ( concluding that the passage of over three years since the acquisition of information that defendant's brother, who shared defendant's residence, had purchased access to various child pornography websites, did not render that information stale).

service, Tumblr. As his communications about those activities revealed, his Tumblr account was similarly used to engage in the sexual exploitation of middle-to-high school aged (minor) boys.

47.     Based on the conduct reported by Twitter and revealed in the communications of the operator of the accounts, and based on my observation of child pornographer characteristics, I believe that the operator of the "mikeyfromtumbl1" and "Survivinglife8" accounts evinces the qualities associated with child pornographers, outlined above. The above facts indicate that the operator of the accounts has created more than one social media account to obtain or request child pornography. Because of the user's operation of multiple social media accounts to traffic in or solicit production of child pornography, I believe the user evinces characteristics common to child pornographers, including retaining child pornography for long periods. I expect the device(s) used by operator of the accounts described above have previously (and will probably still contain, as discussed below) additional child pornography, links to child pornography websites, or artifacts showing access to child pornography. I further expect the device(s) used by or in the possession of the user will probably contain evidence of communications, or attempts to communicate, with other individuals interested in the sexual exploitation of children, i.e., child pornographers.

**COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

48.     This application seeks permission to search for evidence of the crimes under investigation that might be found at the **BUSINESS** (described in Attachment A) on a device or devices accessed or used by **RANDY SPORN**, which may contain evidence of the crimes discussed above.

49.     Because the execution of this warrant involves a search at a business, which is likely to contain both personal and business-related devices that are wholly unrelated to the criminal conduct described herein, your Affiant seeks specific authorization to:

a.      Search the person of **RANDY SPORN** (if located at the **BUSINESS**) to seize and examine any personal computer device that may have been used in the commission of the crimes discussed herein, or which may contain evidence as described in Attachment B, in accordance with this warrant;

b.      Search any workspace of **RANDY SPORN** to seize and examine any personal computer device of **SPORN** that may have been used in the commission of the crimes discussed herein, or which may contain evidence as described in Attachment B, in accordance with this warrant;

c.      Conduct a forensic preview of any device owned by the **BUSINESS** that was used or accessed by **SPORN**, as may be identified by the **BUSINESS** or **SPORN**;

d.      For any device in subparagraph c which is found to contain suspected child pornography, the government must seize the device for further examination consistent with this warrant;

e.      For any device in subparagraph c which is not found to contain suspected child pornography but which reveals access or operation of the accounts discussed herein, the government may obtain a forensic image (copy) of such device for further examination consistent with this warrant;

f.      Collect any information showing the connection of **RANDY SPORN**'s device(s) to the internet connection or network maintained by **BUSINESS**.

50.     Thus, the warrant applied for would authorize the seizure of the above-identified computer devices and other electronic storage media for subsequent offsite examination and, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

51.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a

storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

52.     Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

53.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

54.     As further described in Attachment B, this application seeks permission to search for devices which may have been used in the commission of the crimes under investigation, and to examine those devices to locate: a) computer files that might serve as direct evidence of the

crimes described on the warrant, and b) forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.

55.     Information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. There is probable cause to believe that this forensic electronic evidence (relating to the who, when, and how of the device's use) may remain on the device(s) because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.  Information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used.  For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and

Page **17** of **26**

the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

56.     A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

57.     Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is <u>not</u> present on a storage medium.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

58.     In most cases, a thorough search of information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the BUSINESS, it is sometimes possible to make an image copy of storage media.  Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction.  This is true because of the following:

   a.   *The time required for an examination.* As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on RESIDENCE could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

   b.   *Technical requirements.*  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. This is true even for smartphone devices, which may require different forensic tools to access the content contained in the smartphone depending on the age or model of device. Therefore, it is likely that searching these computer devices will require tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to

know before a search what tools or knowledge will be required to analyze the system and its data on the RESIDENCE.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.   *Variety of forms of electronic media.*  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

59.   *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

60.     As noted above in paragraph 48 and 49, the **BUSINESS** to be searched will likely contain storage media that are predominantly used, and perhaps owned, by persons who are not involved in the crimes under investigation.  For this reason, the government reiterates that it seeks authority to seize and examine the devices outlined in paragraph 49:

a.    Search the person of **RANDY SPORN** (if located at the **BUSINESS**) to seize and examine any personal computer device that may have been used in the commission of the crimes discussed herein, or which may contain evidence as described in Attachment B, in accordance with this warrant;

b.    Search any workspace of **RANDY SPORN** to seize and examine any personal computer device of **SPORN** that may have been used in the commission of the crimes discussed herein, or which may contain evidence as described in Attachment B, in accordance with this warrant;

c.    Conduct a forensic preview of any device owned by the **BUSINESS** that was used or accessed by **SPORN**, as may be identified by the **BUSINESS** or **SPORN**;

d.    For any device in subparagraph c which is found to contain suspected child pornography, the government must seize the device for further examination consistent with this warrant;

e.    For any device in subparagraph c which is not found to contain suspected child pornography but which reveals access or operation of the accounts discussed herein, the government may obtain a forensic image (copy) of such device for further examination consistent with this warrant;

f.    Collect any information showing the connection of **RANDY SPORN**'s device(s) to the internet connection or network maintained by **BUSINESS**.

## CONCLUSION

61.    I submit that this affidavit supports probable cause to believe that the **BUSINESS**, identified as **Calvin Opp Concrete**, located at **1375 S Bebe, Wichita, KS**, and described in Attachment A, contains a device (or devices) which evidence of violations of 18 U.S.C. § 2251, 2252 and 2252A and therefore respectfully request that this Court issue a search warrant for the search of the premises, more specifically described in Attachment A which incorporated by reference as if fully set forth herein, and authorizing the seizure and search of the items described in Attachment B herein.

Respectfully submitted,

John V. Ferreira
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on _____March 10_____, 2021.

Page **21** of **26**

GWYNNE E. BIRZER
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

*Property to be searched/seized*

This warrant authorizes the government to:

a.  Search the person of **RANDY SPORN** (if located at the **BUSINESS**) to seize and examine any personal computer device that may have been used in the commission of the crimes discussed herein, or which may contain evidence as described in Attachment B, in accordance with this warrant;

b.  Search any workspace of **RANDY SPORN** to seize and examine any personal computer device of **SPORN** that may have been used in the commission of the crimes discussed herein, or which may contain evidence as described in Attachment B, in accordance with this warrant;

c.  Conduct a forensic preview of any device owned by the **BUSINESS** that was used or accessed by **SPORN**, as may be identified by the **BUSINESS** or **SPORN**;

d.  For any device in subparagraph c which is found to contain suspected child pornography, the government must seize the device for further examination consistent with this warrant;

e.  For any device in subparagraph c which is not found to contain suspected child pornography but which reveals access or operation of the accounts discussed herein, the government may obtain a forensic image (copy) of such device for further examination consistent with this warrant;

f.  Collect any information showing the connection of **RANDY SPORN**'s device(s) to the internet connection or network maintained by **BUSINESS**.

The BUSINESS is **Calvin Opp Concrete,** located at **1375 S Bebe**, Wichita, KS. The business is located on the west side of Bebe street and is the first structure north of Walker St. The front door faces east. The structure is single story and is brown in color. The numbers 1-3-7-5 are above the front door. There is a six foot chain link fence with barbed wire at the top surrounding the business. The business is pictured below:



RANDY SPORN is an approximately 60 year old white male with gray hair. A photograph of RANDY SPORN is included below:



**ATTACHMENT B**
*Property to be seized*

Subject to the limitations and authorizations of Attachment A, this warrant authorizes the seizure of and/or examination for:

1.  Child pornography (as defined in 18 U.S.C. § 2256(8)), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), in any format or medium, including computer files, prints, negatives, drawings, and paintings.

2.  Child erotica, in any format or medium, including documents, writings, and images or videos of children that do not qualify as child pornography but evince a sexual interest in children.

3.  Documents, records, or correspondence, in any format or medium, pertaining to operation of, or communication with, the Twitter accounts described in the attached affidavit, specifically including "mikeyfromtumblr1" and "Survivinglife8" and the User 9264 account.

4.  Data or information, including software or programs or applications, that show involvement in soliciting, producing, distributing, receiving, possessing or accessing child pornography or visual depictions of minors engaged in sexually explicit conduct, or communicating with any other person regarding child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children.

5.  Data or information for any seized device which may reveal indicia of ownership, access, or use of the accounts and websites described in the attached affidavit.

6.  Data or information for any seized device which may reveal indicia of ownership, access, or operation of the device at times pertaining to child pornography or child sexual

3

exploitation artifacts, including but not limited to User IDs, passwords, setting information, connection logs, logins, notifications, and contemporaneous or near-contemporaneous web history, messaging, or financial transactions.

7.      Data or information concerning online storage or other remote computer storage where child pornography may be stored, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage, and communications or messages regarding such storage.

8.      Data or information concerning encryption, deletion, or destruction of evidence.

9.      Any and all visual depictions of minors that may assist in the identification of minors depicted in images of child erotica or child pornography.